UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-267-FDW

| | |
|---|---|
| WILEY DALLAS JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NORTH CAROLINA DEPARTMENT OF )<br>PUBLIC SAFETY, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 8), and incorporated motions to certify a class and for preliminary injunction, the North Carolina Department of Justice's Response to an Order to show cause why preliminary injunctive relief should not be granted, (Doc. No. 15), and Plaintiff's Reply, (Doc. No. 17). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 7).

### I. BACKGROUND

*Pro se* Plaintiff Wiley Johnson has filed a civil rights suit pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), Rehabilitation Act ("RA") and the North Carolina Constitution with regards to incidents that allegedly occurred at the Mountain View and Avery Mitchell Correctional Institutions. He names the following as Defendants: North Carolina Department of Public Safety ("DPS") Division of Prisons, DPS Commissioner David W. Guice, Dr. Robert Uhren, DPS Secretary Frank L. Perry, Education Assistant James Duckworth, Unit Manager Bret Bullis, Assistant Unit Manager Chad Green, PA Keith D'Amico, Nurse Pendland, Dr. Paula Y. Smith, Nurse Stroupe, Nurse Remfro, Classification Coordinator Cindy Haynes,

1

Program Director I Carolyn Buchanan, Program Supervisor of Education James Vaughn, Western Regional Medical Director Sandra Pittman, Mountain View C.I. Lead RN Norma Melton, Mountain View C.I. Administrator Mike Slagle, Avery Mitchell C.I. Administrator Mike Ball, and John and Jane Doe A-Z.

In his 54-page Amended Complaint filed on December 29, 2016, (Doc. No. 8), Plaintiff makes repetitive allegations on behalf of himself and unnamed class members for whom he seeks class certification. The gist of his allegations is that DPS does not screen incoming inmates for Hepatitis-C virus and, for inmates who have been diagnosed with Hepatitis-C, and refuses to provide "breakthrough" 12-week oral pill treatment until infected inmates have experienced severe and irreversible liver damage.

Guice, as Commissioner of DPS, is responsible for policy and procedure, administration, and supervision of staff and employees within NC DPS during the relevant time.

Perry, as secretary of DPS, is responsible for oversight, operation, and administration of DPS including providing appropriate medical treatment and formulating policy and procedure to ensure the provision of treatment for Plaintiff and those similarly situated.

Smith, as DPS medical director, serves on the Utilization Review Board, and is responsible for overseeing delivery of all medical services in division of prisons as well as the establishment of medical policy and procedure that governs the med treatment of all inmates in the division of prisons.

Regional Medical Director Pittman, Mountain View C.I. Lead Nurse Melton, Mountain View C.I. Administrator Slagle, Avery Mitchell C.I. Lead Nurse Penland, are responsible for supervising and monitoring the delivery of medical and dental care services to inmates, which must be provided consistent with community standards.

2

Uhren and D'Amico are the primary medical providers for PDS at Mountain View C.I. and Avery Mitchell C.I., and both treated Plaintiff. Uhren and D'Amico have the obligation to provide independent, individual, safe, effective medical care Plaintiff and each similarly situated class member consistent with community standard of medical care. They were deliberately indifferent to Plaintiff's disability, disease, and serious medical needs regarding his Hepatitis-C infection in compliance with current standards of individualized professional medical care.

John and Jane Does are doctors, nurses, case managers, correctional officers, supervisors, "and any N.C. Dept of Public Safety/ Division of Prisons, employees, agents, or representatives whose work place are Mountain View Correctional Institution, Avery Mitchell Correctional Institution and any other prisons operated by the defendants charged with responding to requests for medical care for HCV Infections from now-unknown inmates within the NC prison systems." (Doc. No. 8 at 14). They were deliberately indifferent by refusing to treat Plaintiff's disability, disease, and serious medical needs regarding Hepatitis-C infection in compliance with current standards of individualized professional medical care.

DPS policy, and its employees' enforcement of it, amounts to cruel and unusual punishment, violates equal protection because Hepatitis-C is screened and treated differently from HIV, and violates the North Carolina Constitution. Further, the policy violates the ADA and RA because Hepatitis-C infected inmates are excluded from DPS programs that could result in gain time.

Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and such other relief to which he is entitled. He also seeks preliminary injunctive relief for immediate treatment with the 12-week oral pill. See also (Doc. Nos. 9, 12) (letter and unverified "affidavit").

3

Due to the allegedly serious nature of Plaintiff's severe and worsening medical condition, the Court ordered DPS to show cause why preliminary injunctive relief should not be granted. (Doc. No. 14). DPS filed a Response arguing that preliminary injunctive relief is moot. (Doc. No. 15). According to an affidavit by Defendant Smith, Plaintiff began the 12-week oral Hepatitis-C treatment on August 22, 2016. (Doc. No. 15-1). Blood tests drawn on November 30, 2016, and March 1, 2017, demonstrate that he has been cured of the Hepatitis-C virus. (Id.).

Plaintiff filed a sworn statement in reply admitting that DPS had provided the medication, but arguing that it only did so after he filed a tort claim in North Carolina court in September, 2013. (Doc. No. 17). He explains that the lack of proactive treatment to prevent total liver failure and death prior to the completion of his sentence is the "ultimate cause" of him filing this suit. (Doc. No. 17 at 2).

## II.  MANDATORY PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is a remedy that is "granted only sparingly and in limited circumstances." MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)).

To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. DiBiase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter, 555 U.S. at 20).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. See Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). By

contrast, a mandatory injunction "goes well beyond simply maintaining the status quo *pendent lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Taylor v. Freeman, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting Martinez v. Matthews, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. Id. (citing Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Further, it is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor, 34 F.3d at 268; see Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

Plaintiff seeks emergency treatment for his Hepatitis-C infection. However, DPS has demonstrated, and Plaintiff now admits, that he received the "breakthrough" drug treatment he sought and has been cured of Hepatitis-C. Therefore, Plaintiff's motion for preliminary injunction is denied as moot. See, e.g., Neely v. Ortiz, 241 Fed. Appx. 474 (10th Cir. 2007) (inmate's request for injunctive relief was moot where the prison provided the medical treatment plaintiff sought before the court ruled on his request).

### III. CLASS CERTIFICATION

As a general matter, class actions are appropriate in § 1983 litigation. Kirby v. Blackledge, 530 F.2d 583, 588 (4th Cir. 1976). To be certified as a class action, precisely defined class exist and the proposed class representatives be members of the putative class. Fed. R. Civ. P. 23(a); see East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("a class representative must be a part of the class"). In addition, the four prerequisites expressly set out in Rule 23(a) must

5

be satisfied. That is: (1) the class is so numerous that joinder of all members is impracticable (the "numerosity requirement"); (2) there are questions of law or fact common to the class (the "commonality requirement"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (the "typicality requirement"); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy-of-representation requirement"). Fed. R. Civ. P. 23(a).

Once the prerequisites under Rule 23(a) are met, the action must next satisfy one of the three alternative sets found within Rule 23(b):

> (1) prosecuting separate actions by or against individual class members that would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy....

Fed. R. Civ. P. 23(b).

However, the Fourth Circuit does not certify a class where a *pro se* litigant will act as the representative of that class. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). It is plain error for a *pro se* inmate to represent other inmates in a class action. Id.

Plaintiff is a *pro se* prisoner, fails to precisely define the class on whose behalf he wishes to proceed, and has failed to demonstrate he will adequately protect the class' rights.[1] He cannot satisfy Rule 23(b) and is precluded by Fourth Circuit law from litigating an action on behalf of a class. Therefore, his request for class certification is denied.

## IV. SCREENING STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore

---

[1] The Court previously concluded that Plaintiff failed to demonstrate the existence of circumstances that would warrant the appointment of counsel. See (Doc. No. 13).

a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**IV. DISCUSSION**

**(1) Claims on Behalf of Others**

Plaintiff's motion to certify a class has been denied as discussed in Section III, *supra*. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (the Fourth Circuit does not certify a class where a *pro se* litigant will act as the representative of that class); see also Hafner v. Office of Thrift Supervision, 977 F.2d 572 (4th Cir. 1992) (holding that, because plaintiff is *pro se* and is not an attorney, although he filed pleadings purporting to represent a group, he is "barred from representing anyone other than himself.")(unpublished).

Moreover, Plaintiff does not have standing to assert claims on behalf of others. For instance, Plaintiff argues that DPS should institute a screening policy for Hepatitis-C, and that DPS's failure to screen and provide breakthrough drug treatment to cure inmates presents a danger of reinfection to uninfected inmates as well as to the general public upon their release. Plaintiff has failed to allege a "concrete and particularized" injury with regards to the foregoing and,

8

therefore, lacks standing to assert these claims. See Petrella v. Brownback, 697 F.3d 1285, 1293 (10th Cir. 2012) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).

Therefore, to the extent the Amended Complaint asserts claims on behalf of individuals other than Plaintiff, they are dismissed.

**(2)** **North Carolina Division of Public Safety**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Thus, § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985); Alabama v. Pugh, 438 U.S. 781, 781 (1978); but see Ex parte Young, 209 U.S. 123 (1908) (suit against state officials in their official capacities for prospective equitable relief to remedy ongoing violations of federal law are not barred by the Eleventh Amendment).

The North Carolina Department of Corrections is not a "person" within the meaning of the State of North Carolina and shares the State's sovereign immunity. Bennett v. Reed, 534 F.Supp. 83, 85 (E.D.N.C. 1981), *aff'd,* 676 F.2d 690 (4th Cir. 1982). Therefore, suit against NC DPS is precluded and NC DPS is dismissed as a Defendant in this action.

**(3)** **John and Jane Does**

John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the

defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted).

Plaintiff attempts to name as Defendants "and any N.C. Dept of Public Safety/ Division of Prisons, employees, agents, or representatives whose work place are Mountain View Correctional Institution, Avery Mitchell Correctional Institution and any other prisons operated by the defendants charged with responding to requests for medical care for HCV Infections from now-unknown inmates within the NC prison systems." (Doc. No. 8 at 14). Even if Plaintiff was able to identify the John and Jane Doe Defendants described in the Amended Complaint, the claims against them would be subject to dismissal because they are too vague to state a claim. The Amended Complaint makes no attempt to individually identify the Doe Defendants, does not state a short and plain claim against any of them, and fails to explain how the Doe Defendants' actions, rather than DPS policy, has caused the deprivation of his rights.

Therefore, the claims against the John and Jane Doe Defendants are dismissed.

**(4)** **Deliberate Indifference**

"[T]he Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," and "forbids the unnecessary and wanton infliction of pain." Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013) (internal quotation marks omitted). Deliberate indifference to serious medical needs of prisoners "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v.

Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).

The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 241 (internal quotation marks omitted). An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) (deliberate-indifference standard requires prisoner to "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions" (citation omitted)). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). In such cases, in addition to establishing that his medical need was objectively serious, a plaintiff also must show that the delay in providing medical care caused him to suffer "substantial harm." Webb v. Hamidullah, 281 Fed. Appx. 159, 166 (4th Cir. 2008).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976).

Plaintiff argues that Defendants were deliberately indifferent to his life-threatening and painful medical condition by refusing breakthrough drug therapy that is the community medical standard of care, for non-medical reasons. Defendants have jointly enforced the Health Service policy and procedure that contravenes clearly established Hepatitis-C professional medical community standard of care. Health Services policy and procedure requires Hepatitis-C positive inmates to develop serious and permanent health complications before breakthrough drugs are provided. While waiting for medical care, Plaintiff's health significantly deteriorated and he now suffers from liver failure. (Doc. No. 8 at 26).

Plaintiff has adequately alleged that his Hepatitis-C viral infections and attendant health consequences are serious medical needs. See generally Erickson v. Pardus, 551 U.S. 89 (2007) (granting certiorari and vacating judgment upon finding that prisoner's complaint alleging that termination of his treatment for Hepatitis-C was endangering his life was sufficient to state an

Eighth Amendment deliberate indifference claim).

He has also adequately alleged that Defendants were deliberately indifferent by enacting and enforcing policies and procedures that have delayed needed treatment based on non-medical reasons, and are purposefully required Plaintiff suffer severe health complications before providing treatment to cure his Hepatitis-C infection.

These allegations state a facially sufficient claim of deliberate indifference to Plaintiff's serious medical needs and this claim will be permitted to proceed.

**(5)** **Americans with Disabilities Act**

To establish a *prima facie* case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See Constantine v. George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." Miller v. Hinton, 288 Fed. Appx. 901, 902 (4th Cir. 2008) (quoting Bircoll v. Miami-Dade County, 480 F.3d 1072, 1082 (11th Cir. 2007)).

Plaintiff claims that Defendants discriminated against him, caused him to be excluded from participating in programs, and denied him access to services that are available to non-Hepatitis-C

infected North Carolina prison system inmates. (Doc. No. 8 at 44). Plaintiff may serve a longer prison sentence because he is being denied gain-time that is available to other inmates.

Plaintiff has stated a facially sufficient claim of discrimination under the ADA and this claim will be permitted to proceed. See generally Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999) (holding that a deaf inmate stated a *prima facie* ADA violation by alleging that he did not receive the full benefits of participating in prison disciplinary and classification proceedings due solely to his disability).

**(6)** **Rehabilitation Act**

To establish a *prima facie* case under the RA, a plaintiff must prove that: (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit "due to discrimination solely on the basis of the disability." Atkins v. Holder, 529 Fed. Appx. 318, 319-20 (4th Cir. 2013). The RA has a stricter causation requirement than the ADA in that the disability must be the sole cause, as opposed to one of multiple causes, of the discrimination. See Thomas v. Salvation Army S. Territory, 841 F.3d 632, 641 (4th Cir. 2016).

Plaintiff alleges that Defendants discriminated against him and caused him to be excluded from participating in programs and denied access to services in the North Carolina prison system, including access to federally funded programs, due to his Hepatitis-C disabilities. (Doc. No. 8 at 48).

These allegations sufficiently state a claim under the RA which will be permitted to proceed. See generally Randolph, 170 F.3d at 858.

**(7)** **Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend.

XIV, § 1.[2] The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993). The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

---

[2] In addition to the Fourteenth Amendment, Plaintiff cites the United States Constitution's Fifth Amendment in support of his equal protection argument, however, the Fifth Amendment contains no equal protection clause. (Doc. No. 8 at 38).

15

Plaintiff argues that Defendants are violating equal protection by screening and treating Hepatitis-C in a significantly different manner than it screens and treats HIV/AIDS in North Carolina prisons without a rational medical justification for doing so. (Doc. No. 8 at 38).

To make out an equal protection violation, Plaintiff would have to allege that he was being treated differently from other similarly situated – *i.e.* Hepatitis-C positive – inmates. Comparing himself to HIV-infected inmates is unavailing because HIV and Hepatitis-C infected inmates suffer from distinct viruses and are not similarly situated. Plaintiff has failed to allege that he is being treated differently from *similarly situated* individuals, and therefore, he has failed to state an equal protection claim.

**(8)** **State Law Claims**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

Plaintiff seek relief under North Carolina Constitution Article 1, Section 27, which prohibits cruel and unusual punishment, and Article 1, Sections 1, 2, 3, and Article 4, Section 13(1), which provide legal remedies. (Doc. No. 8 at 15).

Plaintiff's federal deliberate indifference claim is being permitted to proceed, and the North Carolina claims are not novel, complex, or substantially predominate the case. Therefore, the Court

will exercise supplemental jurisdiction and allow the North Carolina claims to proceed at this time.

## VI. CONCLUSION

The Amended Compliant will be permitted to proceed on Plaintiff's claims of deliberate indifference to a serious medical need, violation of the ADA, violation of the RA, and violations of North Carolina law. The Amended Compliant is dismissed insofar as Plaintiff attempts to obtain relief on behalf of others, against the NC DPS, and against John and Jane Doe Defendants. The motion for mandatory preliminary injunctive relief for immediate provision of "breakthrough" drug treatment is denied as moot.

## V. CONCLUSION

For the reasons stated herein, Plaintiff's motion for preliminary injunction is denied as moot, and his motion to certify a class is denied. His claims of deliberate indifference to a serious medical need and violations of the ADA and RA have passed initial review, and the Court will exercise supplemental jurisdiction over Plaintiff's North Carolina law claim. The remaining claims will be dismissed.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's motion to certify a class that is incorporated in the Amended Complaint is **DENIED**.

2. Plaintiff's motion for preliminary injunction that is incorporated in the Amended Complaint is **DENIED** as moot.

3. Plaintiff's claims of deliberate indifference to a serious medical need, and violations of the ADA and RA survive initial review under 28 U.S.C. § 1915, and the Court will exercise supplemental jurisdiction over Plaintiff's North Carolina law claims.

4. The claims that Plaintiff attempts to assert claims on behalf of others, claims against

the North Carolina Department of Public Safety, and claims against John and Jane Doe Defendants are dismissed.

5. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **James Duckworth, Bret Bullis, Chad Green, David W. Guice, Robert Urhen, Frank L. Perry, Keith Damico, FNU Penland, Paula Y. Smith, FNU Stroupe, FNU Remfro, Cindy Haynes, Carolyn Buchanan, James Vaughn, Sandra Pittman, Norma Melton, Mike Slagle,** and **Mike Ball**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiff.

Signed: January 16, 2018

_____
Frank D. Whitney
Chief United States District Judge