UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:16-cv-267-FDW

| WILEY DALLAS JOHNSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) ORDER |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Motions filed by Defendants Robert J. Uhren, M.D., and Keith D'Amico, P.A., to Dismiss State Law Claims and for Summary Judgment Limited to Failure to Exhaust Administrative Remedies, (Doc. Nos. 36, 47). Also pending are Plaintiff's Motions to Compel Attendance of a Confined Witness, (Doc. No. 48), and to Subpoena Evidence, (Doc. Nos. 49, 57), and Defendant Uhren's Motion to Extend the Time for Filing Dispositive Motions, (Doc. No. 51).

**I.    BACKGROUND**

Plaintiff filed *pro se* Complaint on August 1, 2016, (Doc. No. 1), and an Amended Complaint on December 29, 2016, (Doc. No. 8). The Amended Complaint passed initial review on claims of deliberate indifference to Plaintiff's serious medical need, Hepatitis-C infection, under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and the Court exercised pendent jurisdiction over Plaintiff's North Carolina claims. (Doc. No. 18). The remaining Defendants are James Duckworth, Bret Bullis, Chad Green, David W. Guice, Robert Uhren, Frank L. Perry, Keith D'Amico, FNU Penland, Paula Y. Smith, FJU Stroupe, FNU Remfro,

1

Cindy Haynes, Carolyn Buchanan, James Vaughn, Sandra Pittman, Norma Melton, Mike Slagle, and Mike Ball.

**(1)** **Amended Complaint** (Doc. No. 8)

Plaintiff argues that Defendants were deliberately indifferent to his life-threatening and painful Hepatitis-C condition by refusing breakthrough drug therapy that is the community medical standard of care, for non-medical reasons. He alleges that Defendants have jointly enforced the Health Service policy and procedure that contravenes clearly established Hepatitis-C professional medical community standard of care. Health Services policy and procedure requires Hepatitis-C positive inmates to develop serious and permanent health complications before breakthrough drugs are provided. While waiting for medical care, Plaintiff's health has significantly deteriorated and he now suffers from liver failure. (Doc. No. 8 at 26). He also alleged that Defendants were deliberately indifferent by enacting and enforcing policies and procedures that have delayed needed treatment based on non-medical reasons and are purposefully required Plaintiff suffer severe health complications before providing treatment to cure his Hepatitis-C infection.

With regards to the ADA and RA discrimination, Plaintiff claims that Defendants discriminated against him, caused him to be denied access to services and programs in the North Carolina prison system, including access to federally-funded programs, that are available to non-Hepatitis-C infected North Carolina prison system inmates. Further, Plaintiff may serve a longer prison sentence because he is being denied gain-time that is available to other inmates.

Finally, Plaintiff seeks relief under North Carolina Constitution Article 1, Section 27, which prohibits cruel and unusual punishment, and Article 1, Sections 1, 2, 3, and Article 4, Section 13(1), which provide legal remedies. (Doc. No. 8 at 15).

**(2)** **Defendants' Motions to Dismiss and for Summary Judgment** (Doc. Nos. 36, 47)

Defendants Uhren and D'Amico argue that Plaintiff has asserted North Carolina medical negligence claims that must be dismissed because he has failed to comply with North Carolina General Statutes § 1A-1, and Rule 9(j) of the North Carolina Rules of Civil Procedure.

Defendants seek summary judgment because Plaintiff failed to exhaust administrative remedies before commencing this action. None of the seven exhausted administrative appeals that Plaintiff completed between that date and the date the Complaint was filed assert the claims against Defendants Uhren and D'Amico that Plaintiff makes against him in the Complaint and Amended Complaint. Uhren and D'Amico argue that the only two grievances that fairly present the allegations against them, grievance numbers 2699 and 3044, were not completed before Plaintiff filed his Complaint and thus failed to exhaust his claims. Seven grievance procedures that Plaintiff completed during the relevant time demonstrate that the administrative remedy procedure was available to him.

**(3)** **Plaintiff's Responses**[1] (Doc. Nos. 46, 54)

Plaintiff filed an "Affidavit of Facts with Exhibits," (Doc. No. 46), that appears to be a Response to Defendant Uhren's Motion, in which he states that he will be seeking default judgment and that Defendant Uhren's motion should be denied. He attaches an unverified "Affidavit," a narrative discussing his medical history, and various medical records and pleadings.

---

[1] The Court issued Orders pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), instructing Plaintiff regarding his right to respond to Defendants' Motions. See (Doc. Nos. 42, 50).

Plaintiff filed a "Motion to Dismiss NC State Rule 9(j) Against Plaintiff," (Doc. No. 54), in which he argues that Defendant D'Amico's defense does not apply to the instant case, but rather, to a case before the North Carolina Industrial Commission that was "voluntarily withdrawn."[2] He argues that Rule 9(j) does not apply to this case, and therefore, it should be rendered an invalid defense and the Defendants' Motions should be denied.

**(4)** **Defendant D'Amico's Reply** (Doc. No. 56)

In his Reply, Defendant D'Amico notes that Plaintiff has failed to respond to the Motion for Summary Judgment addressing the exhaustion of administrative remedies and argues that Plaintiff's allegation that Rule 9(j) does not apply is incorrect.

**(5)** **Evidence**[3]

    **(A)** **Offender Information Screen** (Doc. No. 37-1)

The OPUS Online Offender Information Screen reveals that Plaintiff was at Avery-Mitchell C.I from March 29, 2011 through June 12, 2012; October 11, 2012 through November 19, 2013; and December 3, 2013 through March 22, 2016. He was at Mountain View C.I. on March 22, 2016 through July 20, 2017, and July 27, 2017, through January 1, 2018.

    **(B)** **Defendant Uhren's Affidavit** (Doc. No. 37)

Of the facilities listed on Plaintiff's inmate movement record, Defendant Uhren only treated him, if at all, at Mountain View C.I. and Avery-Mitchell C.I. He did not treat him at Craggy C.I. in 2009, 2010, or 2012.

    **(C)** **Defendant D'Amico's Affidavit** (Doc. No. 47-1)

Of the facilities listed on Plaintiff's movement record, Defendant D'Amico only treated

---

[2] Plaintiff has attached handwritten document purporting to be copies of N.C. Industrial Commission pleadings.

[3] This section is not exhaustive.

4

inmates at Mountain View and Avery-Mitchell C.I.s. While he currently provides certain care at Craggy C.I., he did not do so in 2009-2010 and 2012. (Doc. No. 47-1 at 1).

**(D)** **Kimberly Grande Affidavit** (Doc. No. 38)

Kimberly Grande, the Executive Director of the N.C. Inmate Grievance Resolution Board in Raleigh, Reviewed Plaintiff's Board of Grievance Appeals records from March 29, 2011, through August 3, 2016. The Board received seven Step-3 appeals from Plaintiff in that period:

- 2/3/12, Grievance Number 4680-W-12-0022; Board order issued 3/9/12 (Doc. No. 38-2)
- 4/10/12, Grievance Number 4680-Y-12-0036, Board order issued 4/27/12 (Doc. No. 38-3)
- 11/19/14, Grievance Number 4680-Y-14-0139, Board order issued 1/14/15 (Doc. No. 38-4)
- 12/29/14, Grievance Number 4680-Y-14-0152, Board order issued 3/2/15 (Doc. No. 38-5)
- 10/26/15, Grievance Number 4680-W-15-0118, Board order issued 12/11/5 (Doc. No. 38-6)
- 1/11/16, Grievance Number 4680-2016-WBC-00012, Board order issued 2/24/16 (Doc. No. 38-7)
- 2/12/16, Grievance Number 4680-2016-WBC-00091, Board order issued 3/29/16 (Doc. No. 38-8)

Plaintiff submitted at least two other grievances during that time period, but there were no other appeals from him. (Doc. No. 38 at 3).

**(E)** **Grievances**

W4680-12-00**22**
        2/3/12 Administrative Remedy Procedure (Doc. No. 38-2)
           Officer Pritchard ignores policies and procedures and has subjected Plaintiff to harassment and intimidation; alleged hostility and threats to place Plaintiff in segregation on 2/3/12 during a cell search

        2/7/12 Step-1 Response (Doc. No. 38-2 at 6)
           An investigation found no information to support the allegations against Officer Pritchard

        2/18/12 Step-2 Response (Doc. No. 38-2 at 6)
           Staff adequately responded to the complaint

        3/9/12 Step-3 Response (Doc. No. 38-2 at 7)
            Grievance is dismissed for lack of supporting evidence

Y8680-12-00**36**

        4/10/12 Administrative Remedy Procedure (Doc. No. 38-3 at 2)
            Plaintiff cannot get a job because of medical restrictions placed on him; he has no idea why the restrictions are in place; requesting that the restrictions be lifted so he can work and earn gain time

        4/11/12 Step-1 Response (Doc. No. 38-3 at 5)
            Plaintiff reported back pain to medical and the restrictions were placed on him; if he feels they are in error and he would like to be re-evaluated, submit a sick call, or if he would like to refuse the restrictions, submit an inmate request and he will be allowed to sign a refusal

        4/17/12 Step-2 Response (Doc. No. 38-3 at 5)
            The Step-1 response is correct

        4/27/12 Step-3 Response (Doc. No. 39-3 at 6)
            Proper action was taken by staff and the grievance is considered resolved

Y4680-14-0**139**

        11/19/14 Administrative Remedy Procedure (Doc. No. 38-4 at 2)
            Medical is negligent regarding Plaintiff's diabetic neuropathy; the state-issued boot hurts Plaintiff's feet; requesting a different pair of boots

        12/3/14 Step-1 Response (Doc. No. 38-4 at 2)
            Medical states that Plaintiff refused his medical issued boots; they are the only ones available at present

        12/22/14 Step-2 Response (Doc. No. 38-4 at 5)
            No further action is warranted

        1/14/15 Step-3 Response (Doc. No. 38-4 at 6)
            Considered resolved

Y4680-14-0**252**

        12/29/14 Administrative Remedy Procedure (Doc. No. 38-5 at 2)
            Plaintiff did not refuse medical boots; the boots they tried to give him were regular boots, not medical therapy boots; medical is refusing medical therapy boots for his diabetic neuropathy which is causing unnecessary constant pain in violation of the 8th Amendment

1/7/15 Step-1 Response (Doc. No. 38-5 at 5)
    Plaintiff was approved and issued boots but he refused them; he can submit a sick call to be seen and discuss further with the provider

1/28/15 Step-2 Response (Doc. No. 38-5 at 5)
    No further action is warranted

3/2/15 Step-3 Response (Doc. No. 38-5 at 6)
    Considered resolved

**W4680-15-00<u>18</u>**
    10/26/15 Administrative Remedy Procedure (Doc. No. 38-6 at 2)
        Plaintiff's legal mail was opened by Medical on July 19, 2015, and removed records from September 23, to August 1

    11/3/15 Step-1 Response (Doc. No. 38-6 at 6)
        There are numerous discrepancies in the grievance, including the fact that legal mail is not distributed on Sundays such as July 19, 2015; he did not receive any legal mail from the NC Justice Department in July 2015; the Meical Department does not receive any incoming mail, only the mail room; and the grievance time frame has expired so no further action is recommended

    11/17/15 Step-2 Response (Doc. No. 38-6 at 6)
        Step 1 adequately addresses the offender's concerns

    11/30/15 Step-3 Response (Doc. No. 38-6 at 7)
        Dismissed for lack of supporting evidence


<u>4680-2016-WBC-000**12**</u>

    1/11/16 Administrative remedy procedure (Doc. No. 38-7 at 2)
        Plaintiff was seen by the Avery-Mitchell Medical Department on a sick request for rectal bleeding, fatigue, and dizziness, and was sent to Grace Memorial Hospital that same evening after he declared a medical emergency; the ER doctor at Grace diagnosed a serious medical condition, recommended hospitalization for 3 days, and prescribed insulin for an extremely high blood sugar level; upon his return to Avery-Mitchell, Dr. Uhren refused to provide the medication that the ER doctor prescribed

    1/14/16 Step-1 Response (Doc. No. 38-7 at 7)
        Nothing in the Grace Hospital report or Avery Mitchell records recommend that Plaintiff be started on insulin, however, Dr. Uhren made the decision to begin insulin anyway on 01/07/16, 4 days before the grievance; nurses

7

present when Plaintiff was seen by D'Amico say that D'Amico never referred to the state of North Carolina's financial condition, that he was going to order the needed medication, and whether or not he took it was up to Plaintiff; Plaintiff refused to have his blood sugar checked on 2 occasions

1/19/16 Step-2 Response (Doc. No. 38-7 at 9)
Step 1 adequately addresses Plaintiff's concerns

2/24/16 Step-3 Response (Doc. No. 38-7 at 10)
grievance dismissed for lack of evidence that staff violated policy

4680-2016-WBC-000**81**

2/12/16 Administrative Remedy Procedure. (Doc. No. 38-8 at 2)
Plaintiff saw Dr. Domingo on 1/21/16, who told him he would be referred to Dr. Yurin for hepatitis treatment; it has been 22 days and Plaintiff has not been seen or given notice of and appointment; remedy sought to resolve the grievance: "To receive hepatitis-C treatment."

2/22/16 Step-1 Response (Doc. No. 38-8 at 3)
Dr. Uhren reviewed his chart on 2/4/16 and scheduled Plaintiff to see him to discuss hepatitis treatment; this is non-urgent and Plaintiff will be seen as soon as possible; Dr. Uhren will submit UR for treatment at that time after he determines if Plaintiff qualifies; Plaintiff should watch for his appointment time to be posted

2/23/16 Step-2 Response (Doc. No. 38-8 at 4)
Step 1 adequately addresses Plaintiff's concerns

3/29/16 Step-3 Response (Doc. No. 38-8 at 5)
No supporting evidence that staff violated policy, grievance dismissed

4855-2016-GPOD-0**2699**

7/11/16 Administrative Remedy Procedure (Doc. No. 5-1 at 13)
Plaintiff has been requesting Hepatitis-C treatment for the past 9 years; his liver is now to the point that he has continued pain & suffering daily; he is gaining fluid and having a rash caused by liver failure

7/29/16 Step-1 Response (Doc. No. 5-1 at 14)
Plaintiff has an appointment in the near future for an abdominal ultrasound; once this is done he will see Dr. Uhren to discuss treatment for Hepatitis-C

8/17/16 Step-2 Response (Doc. No. 5-1 at 15)
An investigation found: Plaintiff has been scheduled for an ultrasound, which should take place very soon; after that has been completed, Plaintiff

will talk to a provider to discuss further treatment options; no further recommendation has been made

    8/20/16 Step-3 Response (Doc. No. 8-1 at 4)
Staff adequately addressed Plaintiff's concerns; he is encouraged to continue to sign up for sick call and inform staff of any concerns or changes; considered resolved

**4855-2016-GPOD-03044**
    8/17/16 Administrative Remedy Procedure Filed; see (Doc. No. 8-1 at 3)

    10/13/16 Step-3 Response (Doc. No. 8-1 at 3)
Plaintiff stated he was being treated unfairly when his request to be treated for Hepatitis-C was ignored; it appears that staff adequately addressed his concerns; inmate is encouraged to continue to sign up for sick call and inform staff of any concerns or changes; considered resolved

**4855-2016-GPOD-03782**
    10/27/16 Administrative Remedy Procedure (Doc. No. 8-1 at 6)
Plaintiff reports extreme pain in his chest, back, and lungs, vomiting, and having diarrhea: Nurse Ballman screened Plaintiff' on an emergency sick call he submitted on 10/27/16; Plaintiff's blood pressure was 190 over 99 but Ballman refused to treat him and sent me back to the dorm because he said Plaintiff did not have a sick call for this

    10/31/16 DC-410 Screening Response (Doc. No. 8-1 at 5)
Grievance rejected; it can only be accepted when the current grievance completes Step-2

## II.    LEGAL STANDARDS

**(1)**    <u>Dismissal</u>

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts

9

all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor does a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009).

**(2)** **Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818

10

(4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

**(1) Dismissal: North Carolina Medical Malpractice**

In North Carolina, there are substantive legal requirements that a person must follow to pursue a medical malpractice claim. A plaintiff asserting negligence must prove the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, a causal relationship between the breach of duty and the plaintiff's alleged injuries, and certain actual injury or loss sustained by the plaintiff. Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995); Blackwell v. Hatley, 202 N.C.App. 208, 212, 688 S.E.2d 742, 746 (N.C. Ct. App. 2010).

North Carolina Rule of Civil Procedure 9(j) states in relevant part:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>
> (1) The pleading specifically asserts that the medical care and all records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the

> Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j).

Failure to comply with Rule 9(j) is ground for dismissal of a state medical malpractice claim filed in federal court. See, e.g., Estate of Williams–Moore v. Alliance One Receivables Mgmt. Inc., 335 F.Supp.2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F.Supp.2d 671, 676-77 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F.Supp.2d 712, 713-14 (E.D.N.C.2001); see also Thigpen v. Ngo, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). The North Carolina General Statutes defines a "[m]edical malpractice action" as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care provider." N.C. Gen. Stat. 90-21.11(2)a.

Defendants characterize Plaintiff's state-law claims as claims for medical malpractice. Plaintiff does not dispute that characterization. Nor does he dispute Defendants' allegation that he failed to comply with Rule 9(j). Plaintiff's argument in opposition of dismissal – the contention that Rule 9(j) does not apply to this action – is legally incorrect. See, e.g., Estate of Williams–Moore, 335 F.Supp.2d at 649; Frazier, 308 F.Supp.2d at 676-77.

Plaintiff has failed to comply with Rule 9(j) with regards to his North Carolina medical malpractice claims against Defendants Uhren and D'Amico, and therefore, their Motions to Dismiss Plaintiff's state law claims will be granted.

**(2)** **Summary Judgment: Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is mandatory. Id. at 524 (citation omitted); Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. A prisoner is not entitled to exhaust administrative remedies during the pendency of an action. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). The PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. It is well settled that a grievance does not have to mention a defendant by name so long as the grievance gives the defendant fair notice of the claim. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008) (NC DPS's administrative remedy procedure does not require a plaintiff to name each defendant in his grievances). However, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is

13

appropriate. See Davidson v. Davis, 2015 WL 996629 at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004)).

The record reflects that Plaintiff exhausted seven grievances between March 29, 2011, when Plaintiff arrived at Avery-Mitchell C.I., and August 1, 2016, when the Complaint was filed in the instant case, Grievance Numbers 22, 36, 139, 252, 18, 12, and 81. He initiated, but did not complete, three more grievances after the Complaint was filed, Grievance Numbers 2699, 3044, and 3782.

Of the grievances that were exhausted before Plaintiff filed the Complaint, only Grievance Number 81 addresses Plaintiff's Hepatitis-C infection. In it, he alleges that Dr. Domingo told him on January 21, 2016, that he would be referred to Dr. Uhren[4] for treatment, and that 22 days had passed without Plaintiff having been seen or given notice of an appointment. (Doc. No. 38-8 at 2).

Grievance Number 81 only mentions Dr. Domingo's allegedly broken promise that Plaintiff would be receiving an appointment with Dr. Uhren to discuss his Hepatitis-C treatment. The grievance only puts DPS on notice of the brief 22-day delay in the prison's appointment referral process. It fails to put DPS on fair notice that Dr. Uhren, P.A. D'Amico saw Plaintiff and was deliberately indifferent to Plaintiff's Hepatitis-C infection by refusing to provide breakthrough drug therapy, the long-term denial of which caused Plaintiff's health to deteriorate. See, e.g., Picken v. Lewis, 2017 WL 3277121 (W.D.N.C. Aug. 1, 2017) (granting summary judgment to defendant where prisoner's grievance records did not mention the defendant or identify any conduct whatsoever by that defendant); Davidson, 2015 WL 996629 at *3 (dismissing a failure to supervise claim where the plaintiff's grievance allegations focused on excessive force and did not mention failure to supervise)

---

[4] Spelled "Yuren" in the grievance.

14

Plaintiff first complained that he had been seeking Hepatitis-C treatment for nine years and that his liver was sustaining damage from the longstanding denial of Hepatitis-C treatment in Grievance Number 2699. That grievance was not exhausted until August 20, 2016, 19 days after Plaintiff filed the Complaint in the instant case. See Porter, 534 U.S. at 524 (exhaustion must be complete before the action is filed); Jones, 549 U.S. at 211 (same).

Plaintiff failed to put DPS on fair notice of his claim regarding the longstanding denial of Hepatitis-C breakthrough drug treatment in any grievance that was exhausted before the Complaint was filed. Therefore, summary judgment will be entered in favor of Defendants Uhren and D'Amico.

### IV.  PENDING MOTIONS

**(1)  Plaintiff's Motion to Compel Attendance of Confined Witness** (Doc. No. 48)

Plaintiff has filed a Motion to order the Sheriff to make Plaintiff available for trial. This Motion will be denied as premature because discovery is still underway, the time to file dispositive motions has not yet expired, and the Court has not yet determined whether a trial will be warranted.

**(2)  Plaintiff's "Affidavit of Fact with Motion to Supena Evidence"** (Doc. Nos. 49, 57)

Plaintiff seeks "fair representation of the court(s)" and "the right to unhindered self-representation/litigation." (Doc. No. 49 at 1). He moves to subpoena "all evidence" from "answering-Defendants, collectively" or "state's evidence." (Doc. No. 49 at 2). He seeks all medical records from 2007 through 2018. (Doc. No. 57 at 1).

These Motions will be denied because Plaintiff seeks discovery, and his requests have been misdirected to the Court. See Fed. R. Civ. P. 26(c) (as a general matter, a party must make initial disclosures at or within 14 days after the parties Rule 26(f) conference); Local Rule 26.1 ("Official Court-ordered and enforceable discovery does not commence until issuance of the scheduling

order."); Local Rule 26.2 ("The parties shall not file any initial disclosures, designations of expert witnesses and their reports, discovery requests or responses therto, deposition transcripts, or other discovery material unless: (1) directed to do so by the Court; (2) such materials are necessary for use in an in-court proceeding; or (3) such materials are filed in support of, or in opposition to, a motion or petition.").

**(3)** **<u>Defendant Uhren's Motion for an Extension of Time</u>** (Doc. No. 51)

Defendant Uhren seeks an extension of time to file dispositive motions until 60 days after the Court resolves the instant Motions to Dismiss and for Summary Judgment. This motion will be denied as moot.

**V. CONCLUSION**

In sum, for the reasons stated herein, Defendants' Motions to Dismiss and for Summary Judgment are granted, Plaintiff's pending Motions will be denied, and Defendant Uhren's Motion for an Extension of Time will be denied as moot.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Uhren and D'Amico's Motions to Dismiss State Law Claims and Motions for Summary Judgment Limited to Failure to Exhaust Administrative Remedies, (Doc. Nos. 36, 47) are **GRANTED**.

2. Plaintiff's Motions to Compel Attendance of a Confined Witness, (Doc. No. 48), and to Subpoena Evidence, (Doc. Nos. 49, 57), are **DENIED**.

3. Defendant Uhren's Motion to Extend the Time for Filing Dispositive Motions, (Doc. No. 51), is **DENIED** as moot.

4. The Clerk of Court is instructed to terminate Defendants Uhren and D'Amico as parties to this action.

Signed: July 27, 2018

Frank D. Whitney
Chief United States District Judge